UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

KAREN COOK,

Plaintiff-Respondent,

v.

CTC COMMUNICATIONS CORP.,

Defendant-Petitioner.

Civil Action No. 1:06-cv-58

**DEFENDANT'S MOTION IN LIMINE TO EXCLUDE EVIDENCE CONCERNING BRADSTREET'S OPINIONS AND BELIEFS ABOUT ALLIERI'S MOTIVES AND BRADSTREET'S SETTLEMENT AGREEMENT**

Defendant CTC Communications Corp. ("CTC") respectfully moves that this Court prohibit former CTC employee, Tracine Bradstreet, from testifying about her beliefs and opinions about Ray Allieri and/or CTC. Additionally, CTC asks that this Court prohibit the introduction of any evidence about Bradstreet's settlement agreement with CTC. All such evidence is irrelevant to the issues in this case and, if mentioned during the trial, would confuse and mislead the jury and unfairly prejudice Defendant. Therefore, all such testimony should be excluded under Federal Rules of Evidence 402 and 403.

Moreover, Bradstreet's testimony regarding her perception of CTC's Chief Executive Officer's tendencies is character evidence and is inadmissible under Fed. R. Evid. 404. Finally, documents and testimony concerning settlement negotiations and the actual settlement agreement are excludable under Fed R. Evid. 408, 403 and 801.

**FACTS**

CTC sells voice and data communication systems. In 2005, CTC acquired another communications company, Lightship Telecom, LLC ("Lightship"). Lightship had a significant number of employees but had different benefit and payroll systems from CTC.

Plaintiff Cook was hired by CTC on July 29, 2005 to work as a Regional Human Resources Manager, assigned to CTC's office in Bedford, New Hampshire. She was responsible for providing human resource services to employees in New Hampshire, Vermont, New York and Western Massachusetts. Many of the employees in those areas were former Lightship employees. As Regional Human Resources Manager, she reported to Vice President of Human Resources, Tracine Bradstreet.

Cook was unable to work cooperatively with the other members of the Human Resources department and, in November 2005, after slightly more than three months of employment, CTC's Chief Executive Officer, Ray Allieri, terminated her.

On January 25, 2006, Plaintiff Cook filed suit alleging that she had been terminated in retaliation for bringing alleged legal issues to the attention of CTC's Chief Executive Officer, Ray Allieri. Specifically, Cook alleges that she was terminated because she complained that the Company was violating, or had violated, the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), the Family Medical Leave Act ("FMLA"), and the Fair Labor Standards Act ("FLSA"). She also asserts that she was wrongfully terminated in violation of public policy and that her termination also violated the above statutes. (Plaintiff's First Amended Complaint at ¶¶ 47-60).

Bradstreet was CTC's Vice President of Human Resources from the summer of 2004 to November 2005. During that time, Allieri received a number of complaints about Bradstreet's

performance from her subordinates and from members of senior management. After CTC acquired Lightship, Bradstreet's deficiencies became clearer as the HR department was faced with the significant and difficult task of integrating CTC and Lightship.

In late October 2005, Allieri notified Bradstreet that she would be terminated. Pursuant to its usual practice when terminating a Company officer, CTC began to negotiate the amount of Bradstreet's severance, a process that continued after her separation.

Both CTC and Bradstreet were represented by counsel in their negotiations over Bradstreet's severance. During those negotiations, in an effort to increase the severance offered by CTC, Bradstreet's attorney asserted that Bradstreet could bring a number of claims against CTC. It is impossible for CTC to identify which of those claims were raised in good faith and which were posturing by her attorney. CTC refuted and denied all of Bradstreet's allegations and the parties eventually agreed to a Separation Agreement in which Bradstreet released all claims against CTC. Bradstreet received severance of $ $29,625.00, plus $6,750.00 for fees only $12,894.30 more than the Company had offered her before learning about her alleged claims.

The negotiation and execution of that Agreement was pursuant to CTC's standard practices when terminating a member of Company management – a fact likely to be lost on jurors unfamiliar with the termination of corporate officers.

At her deposition, Bradstreet testified about her <u>opinion</u> about the reasons for her termination. Specifically, she stated that she believed that Allieri did not "want to hear disagreement", that he responded aggressively to people who raised issues, and terminated her in retaliation for raising concerns about possible gender discrimination. She also agreed with Cook's attorney's characterization of her as a "whistleblower". (Bradstreet Dep. 48-56, attached as Exhibit 1).

Bradstreet is wrong. Allieri terminated Bradstreet because of her performance. However, if Bradstreet is permitted to testify about her unsupported beliefs, CTC will be forced to prove that Bradstreet's opinions are wrong and that the real reason for her termination was her performance. That process will essentially require a wholly separate trial likely to take several days. There is no "risk" of jury confusion in that event – jury confusion is inevitable.

## ARGUMENT

Plaintiff should not be permitted to introduce evidence concerning Bradstreet's allegations against CTC or the Settlement Agreement between CTC and Bradstreet. Such evidence is completely irrelevant to Cook's allegations against CTC, is offered in the hopes of confusing and distracting the jury and is explicitly barred by Fed. R. Evid. 402, 403, 404, 408 and 801.

### I. EVIDENCE CONCERNING BRADSTREET'S ALLEGATIONS AGAINST CTC AND HER OPINIONS ABOUT ALLIERI ARE UNDULY PREJUDICIAL AND WILL CONFUSE THE JURY.

This Court should prohibit Plaintiff from referring to, mentioning or introducing any evidence about Bradstreet's allegations against CTC, including, but not limited to, her attorney's claims of gender discrimination and retaliation, and her opinion concerning Allieri's character.

Specifically, the Court should exclude evidence and testimony concerning:

1. Bradstreet's assertion that she was terminated due to her gender.

2. Bradstreet's assertion that CTC and/or Allieri retaliated against her for stating that people proposed for lay off were in a protected class.

3. Bradstreet's beliefs about Allieri's response to disagreements or problems.

4. Bradstreet's perception that she was a whistleblower and/or terminated her because she was a whistleblower.

5. Bradstreet's assertion that CTC retaliated against her for questioning the decision to demote an individual responsible for bringing compliance issues to the company's attention.

Plaintiffs in employment cases frequently seek to introduce the testimony of other former employees that the Company had also discriminated against them or engaged in similar unlawful behavior. Such testimony is highly prejudicial since it invites/urges the jury to: (1) accept that the witness's opinion is correct; and (2) conclude that if the Company engaged in one illegal act, it likely engaged in other illegal acts.

Such testimony is routinely excluded for a variety of sound reasons. First, its prejudicial impact far outweighs its slight probative value. Second, to rebut the witness's testimony, defendants must introduce evidence that the witness's belief is wrong. Thus, the defendant must essentially "try" the witness's case. However, that exercise itself is prejudicial since it invites the jury to conclude that, "where there is smoke, there is fire". Finally, evidence that a person, such as Allieri, allegedly retaliated against someone other than the Plaintiff is inadmissible character evidence. All those reasons apply here and require the exclusion of Bradstreet's proposed testimony described above.

Defendant anticipates that Cook will ask Bradstreet to testify about her opinions about Allieri to support Cook's claim that he terminated her in retaliation for raising various legal issues. In short, Cook seeks to offer Bradstreet's testimony in the hope that the jury will conclude that if Bradstreet was fired in retaliation for raising various issues (albeit unrelated to Cook's complaints) than Cook was also fired for that reason. This is the very type of evidence that Rule 403 was enacted to exclude.

### A. Evidence About Bradstreet's Opinions Is Intended To Incite The Jury's Emotions.

Evidence is unfairly prejudicial if it "'invites the jury to render a verdict on an improper emotional basis.'" United States v. Flemmi, 402 F.3d 79, 86 n.8 (1st Cir. 2005) (quoting United States v. Varoudakis, 233 F.3d 113, 122 (1st Cir. 2000)); see also United States v. Currier, 836 F.2d 11, 18 (1st Cir. 1987) ("Unfairly prejudicial evidence . . . is evidence that triggers the mainsprings

of human action in such a way as to cause the jury to base its decision on something other than the established proposition in the case"); McElwin v. Harris, 2006 U.S. Dist. LEXIS 18273, 7-8 (D.N.H. 2006) (citing Fed. R. Evidence 403 advisory committee's note that "Unfair prejudice" sufficient to warrant exclusion of relevant evidence must at a minimum have an "undue tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one.").

Bradstreet's theories concerning Allieri's motives and the reason for her termination are not material to any of Cook's claims concerning her termination. Hence, her testimony has only one purpose -- to convince the jury that if Allieri committed one allegedly "bad" act he was likely to have committed another. Such testimony must be excluded. A Court should exclude evidence where the "tendency of the evidence [is] to prove some adverse fact not properly in issue or unfairly to excite emotions against the defendant." United States v. Figueroa, 618 F.2d 934, 943 (2nd Cir. 1980) (emphasis added).

When evidence has the tendency to "prove a defendant's propensity to commit [bad acts]," the court must balance the probative value of the evidence with its prejudicial impact. Id. Bradstreet's evidence is prejudicial if it may have an adverse impact on CTC beyond the fact for which it is offered. Here, the "[e]vidence is prejudicial … [because the purpose is] to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence." Id. (citing Advisory Committee Note to Rule 403; S. Saltzburg and K. Redden, Federal Rules of Evidence Manual 43 (2d ed. 1978 Supp.)).

In this case, Cook hopes that the jury will conclude that if Allieri improperly terminated Bradstreet, he likely also improperly terminated Cook. In short, Cook seeks to portray Allieri as someone who terminates employees who disagree with him or raise difficult issues – based solely on Bradstreet's unsupported opinion. Federal Rule of Evidence 403 was enacted to prevent the jury from taking such mental leaps of faith. See Chicago College of Osteopathic Medicine v. George A.

Fuller Co., 719 F.2d 1335 (7th Cir. 1983) (holding that evidence of a company's other bad acts, "although not totally irrelevant" were properly excluded under Rule 403).

Further, no curative instruction could limit the impact of Bradstreet's testimony. See Haskell v. Kaman Corp., 743 F.2d 113 (2d Cir. 1984)(holding that "even the strongest jury instructions could not have dulled the impact of a parade of witnesses, each recounting his contention that defendant had laid him off because of his age.") Since Bradstreet's opinion about her termination is both irrelevant and highly prejudicial, it must be excluded.

**B. Bradstreet's Testimony Would Require A Lengthy Trial About Bradstreet Within The Trial About Cook.**

If Bradstreet testifies about the reasons for her termination, CTC will be forced to refute her claims – resulting in a mini-trial about Bradstreet's termination. Courts routinely exclude testimony from other employees about the circumstances surrounding their termination to avoid that result.

> Defendants then would have been placed in the position of either presenting the justification for each witnesses' lay off, or of allowing the testimony to stand unrebutted. This latter alternative, of course, would have had an obvious prejudicial impact on the jury's consideration of [Plaintiff's] case. To have pursued the former option, defendants would have been forced, in effect, to try [the many] cases together with the attendant confusion and prejudice inherent in that situation.

Moorhouse v. Boeing Co., 501 F. Supp. 390 (D. Pa. 1980) aff'd 639 F.2d 774 (3d Cir. 1980) see also Tennison v. Circus Circus Enters., Inc., 244 F.3d 684 (9th Cir. 2001) (excluding a witnesses testimony because it would have "resulted in a 'mini trial,' considering that much of the[] testimony was disputed by Defendants"); McWhorter v. Birmingham, 906 F.2d 674 (11th Cir. 1990) (upholding the exclusion of evidence relating to other employees' grievances because it would "have resulted in a series of mini-trials centering on the employment history of each [employee]"); Franco-Rivera v. Chairman of Bd. of Directors of Federal Deposit Ins. Corp., 7751

F. Supp. 13 (D. P.R. 1990) (granting motion in limine to exclude testimony of other employees concerning their own discriminatory complaints).

Not only will CTC have to refute Bradstreet's allegations about her termination but she alleged that one of the reasons CTC terminated her was that she successfully challenged the layoff of other employees. Thus, CTC will be forced to offer rebuttal testimony concerning why those individuals were initially selected for layoff and why the decision was rescinded. Not only will such testimony lengthen the trial, but it is highly prejudicial since Bradstreet's speculation inaccurately portrays CTC as a company that engages in chronic unlawful conduct – even where no employee lost his/her job. If such testimony is allowed, jury prejudice is inevitable.

In addition, testimony concerning the pendancy of other litigation is inadmissible under Rule 403. One of the topics which Cook seeks to introduce is Bradstreet's testimony that she hired an attorney who raised allegations against CTC and threatened to bring a lawsuit. Such testimony serves no purpose other than to lead the jury to conclude that because Bradstreet's attorney threatened legal action, her claims must have had some merit. Cook will then argue that, if Bradstreet's claims had merit, hers do as well. Therefore, evidence about Bradstreet's demand letter and her allegations should be struck. See Union Carbide Corp. v. Montel, N.V., 28 F.Supp.2d 833 (S.D.N.Y. 1998) ("Plaintiff's motion to preclude Defendant from offering evidence of or referring to other litigation previously filed by UCC…is granted pursuant to FRE 401, 403, and 404(b)). See also Harrell v. DCS Equipment Leasing Corp., 951 F.2d 1453 (5th Cir. 1992)("Before the selection of the jury, the trial court granted the defendants' motion in limine to preclude introduction of evidence regarding other lawsuits").

**C. Bradstreet's Beliefs And Opinions Are Unreliable.**

All evidence must be reliable. However, evidence about another employee's opinion about his/her performance and termination is rarely, if ever, reliable. In Haskell v. Kaman Corp., 743

F.2d 113, 122 (2d Cir. 1984), the Second Circuit held that the district court had erred in permitting other employees to testify about their "subjective" beliefs concerning their own and their co-worker's performance and terminations. The Second Circuit concluded that the evidence amounted to "unnecessary collateral issues" and its probative value was "substantially outweighed by the danger of unfair prejudice." See also Moorhouse v. Boeing Co., 501 F. Supp. 390 (D. Pa. 1980) (excluding testimony offered by other employees concerning the reason for their lay offs under Rule 403).

Bradstreet's testimony regarding her termination is based on nothing more than her own "personal beliefs, conjecture and speculation." See Chappell v. GTE Products Corp., 803 F.2d 261 (6th Cir. 1986)(excluding such testimony as unreliable). Indeed, Bradstreet testified that she had no basis for her opinion other than coincidence and was not sure about her opinions. For example, at her deposition she testified regarding her retaliation claim as follows:

Q: You believe your termination had something to do with your raising that issue?

A: I'm not sure. I believe that the timing is all too coincidental.

…

Q: Senior Management at CTC, including Ray Allieri and Jim Prenetta, did not appreciate it when you raised your concerns regarding those people on the list who were slotted to be laid off or terminated, correct?

A: I don't know.

(Bradstreet Dep. at 43, 45-46, attached as Exhibit 1).

It is clear from the above colloquy that Bradstreet's theories concerning her termination are based on her subjective belief that she should not have been terminated and are not based on admissible evidence. Therefore, they are unreliable and must be excluded. See United States v. Ingraham, 832 F.2d 229, 235 (1st Cir. 1987)(holding that for evidence of similar acts to be admissible there must be "sufficient" evidence "to allow a jury to find that the defendant committed the act.").

**D. Cook Agrees With CTC's Reasons For Terminating Bradstreet.**

In most cases in which a party seeks to introduce testimony about the Company's actions toward other employees, the party seeking to introduce such testimony agrees with their witness's perception. That is not the case here. Not only is Bradstreet's belief about Allieri and the reasons for her termination unreliable and unduly prejudicial, but not even Cook agrees with Bradstreet's opinions about the reasons for her termination. Cook reportedly stated both during and after her employment that Bradstreet was incompetent and unqualified. CTC agreed with Cook's assessment and terminated Bradstreet. Although Cook clearly believes that CTC correctly assessed and terminated Bradstreet, she seeks to introduce Bradstreet's opinion – with which Cook disagrees - to support her claims.

Thus, unlike cases in which the Plaintiff seeks to introduce the testimony of other employees, Cook clearly does not agree with Bradstreet's opinion about her performance or the reasons for her termination. Thus, Cook believes that Bradstreet was incompetent and agrees with Allieri's decision to terminate her. However, she seeks to introduce Bradstreet's testimony that she was performing her job well and was terminated for an improper, incorrect reason – testimony Cook does not believe. Such evidence has only one purpose – to prejudice the jury against Allieri. That goal is improper and Bradstreet's testimony must be struck.

**II. BRADSTREET'S ALLEGATIONS ARE CHARACTER EVIDENCE AND MUST BE EXCLUDED UNDER RULE 404.**

Federal Rule of Evidence 404 prohibits the use of character evidence "for the purpose of proving action in conformity therewith". It also disallows evidence of other "bad acts" to "prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(a) and (b). Plaintiff's proposed use of Bradstreet's testimony violates both of these provisions.

First, Bradstreet's testimony concerning her opinion of Allieri's reaction and response to disagreements and issues will be offered as evidence of Allieri's character to show that he had the

same reaction to Cook. For example, Bradstreet testified that "[Ray Allieri] didn't want to hear disagreement" and that "he didn't want to hear that there were any problems with the way CTC was doing things." (Ex. 1, Bradstreet Dep. at 49).[1] Plaintiff is attempting to show that it was part of Allieri's character to condemn employees who raised issues to him. Plaintiff will offer this evidence to show that Allieri terminated her because she raised issues. This is quintessential character evidence prohibited under Rule 404(a).

Second, Plaintiff seeks to offer Bradstreet's allegation that Allieri terminated her due to her expression of concern or disagreement to show that Allieri acted similarly towards her. This is directly prohibited by Rule 404(b). See United States v. Williams, 458 F.3d 312 (3d Cir. 2006)(upholding the district court's decision to exclude evidence where the purpose was to show a propensity to commit a particular act).

Moreover, as stated above, Bradstreet's allegations are based on nothing more than coincidence and speculation. Even when prior bad act evidence is admissible under one of the exceptions to the rule, it is inadmissible unless "the jury can conclude that the act occurred and that the defendant was the actor." Huddleston v. United States, 485 U.S. 681 (1988). The Supreme Court has held that a party may not "parade past the jury a litany of prejudicial similar acts that have been established or connected to the defendant only by unsubstantiated innuendo." Id. Bradstreet's beliefs and theories are mere conjecture, and are based on nothing more than her own opinion. Indeed, as Bradstreet testified, the only basis for her opinion is that, "the timing (of her termination) is very coincidental". (Ex. 1, Bradstreet Dep. 51). Consequently, her opinions are inadmissible.

## II. BRADSTREET'S SETTLEMENT AGREEMENT AND RELATED NEGOTIATIONS MUST BE EXCLUDED

[1] This evidence will also be challenged on numerous other grounds, for example lack of foundation or specific knowledge.

Plaintiff also seeks to produce testimony and documents concerning Brastreet's settlement agreement with CTC and the related settlement negotiations. Plaintiff has admitted that she seeks to exploit Bradstreet's settlement to prove liability in her case. (Plaintiff's First Motion to Compel at 5). This is expressly prohibited by Fed. R. Evid. 408. Additionally, the settlement documents are prejudicial and should be excluded under Rule 403. Finally, the documents contain hearsay evidence and should be excluded under Fed. R. Evid. 801.

**A. Federal Rule of Evidence 408 Was Enacted To Encourage and Protect Settlement Negotiations and Agreements.**

Rule 408 states as follows:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either liability of amount, is not admissible to prove liability or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible.

Evidence about settlement negotiations and agreements are not admissible because settlement is encouraged and they have little relevance.

> "[E]xclusion of evidence of settlement offers is justifiable on two grounds. First, the rule illustrates Congress' desire to promote a public policy favoring the compromise and settlement of claims by insulating potential litigants from later being penalized in court for their attempts to first resolve their dispute out of court. Second, such evidence is of questionable relevance on the issue of liability or the value of a claim, since settlement may well reflect a desire for peaceful dispute resolution, rather than the litigants' perceptions of the strength or weakness of their relative positions."

McInnis v. A.M.F., Inc., 765 F.2d 240 (1st Cir. 1985) (citing Fed. R. Evid. 408, advisory committee note).

The Rule prohibiting evidence of settlements was intended to foster free-flowing, informal discussions that are often necessary for effective settlement negotiations. Ramada Dev. Co. v.

Rauch, 644 F.2d 1097, 1106 (5th Cir 1981) (holding that Rule 408 is "designed to encourage settlements by fostering free and full discussion of the issues."). Without the protections of Rule 408, parties would be reticent to exchange information and enter into settlement discussions.

The Rule applies with equal force to settlements and settlement negotiations between a party to the litigation and a nonparty. Thus, the fact that a party settled a claim with another is not admissible to prove the validity or amount of the claim currently before the Court. The Rule is intended to provide incentive for compromise; without such a broad rule of exclusion, litigants would be deterred from free-flowing settlement negotiations where multiple suits have been or might be brought. See Branch v. Fidelity & Cas. Co., 783 F.2d 1289, 1294 (5th Cir. 1986). ("The spectre of a subsequent use to prejudice a separate and discrete claim is a disincentive which Rule 408 seeks to prevent.").

**B. Plaintiff's Admitted Reason For Seeking The Documents in Discovery Violates Rule 408.**

As discussed above, Rule 408 was enacted to prevent parties from doing exactly what Plaintiff wishes to do — profit from and exploit the settlement process. Plaintiff admitted in her Motion to Compel production of these documents that she intended to use them to "provide factual support for, and corroborate, the legal claims [she] is asserting in her lawsuit." (Plaintiff's First Motion to Compel at 5, emphasis added). Therefore, Plaintiff admits that she seeks documents relating to settlement negotiations between Bradstreet's attorney and CTC's attorneys for the sole purpose of finding evidence to support her claim that CTC is liable in her lawsuit. This is expressly prohibited by Rule 408. The First Circuit has held that admission of a settlement agreement or negotiations to prove liability is reversible error. See McInnis, 765 F.2d at 247 (holding that Rule 408 applies where the purpose of the settlement agreement is for the jury to infer that a party did or did not do a relevant act).

### C. The Settlement Evidence is Also Prohibited Under Rule 403 And As Hearsay.

Evidence that a defendant employer paid another employee a substantial sum of money to avoid litigation could lead the jury to conclude that the employer engaged in wrongdoing. McInnis, 765 F.2d at 247-249 (holding that such evidence is inadmissible because it might lead the jury to perceive that the defendant would not have paid the substantial sum "were [it] not … at fault." This sort of inference is unduly prejudicial and is expressly prohibited by Rule 403.

Rule 801 prohibits the admission of hearsay evidence, except in certain defined situations. The settlement evidence contains hearsay evidence because it relies on "out of court statements, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). The settlement evidence is replete with such "out of court statements" offered "to prove the truth of the matter asserted." The following are a few examples:

1. Bradstreet's attorney's correspondence with CTC's attorney contains allegations of acts and statements made by CEO Allieri.
2. Bradstreet's attorney's correspondence contains statements concerning the company's decision making process during a reduction in force.
3. Bradstreet testified at her deposition regarding statements that Allieri made to her and others.
4. Bradstreet's testimony regarding Allieri's body language.

Consequently, in addition to the evidence being excludable under Rule 408 and 403, it also contains hearsay evidence that is excludable under Rule 801.

## IV. BRADSTREET'S TESTIMONY AND SETTLEMENT DOCUMENTS ARE IRRELEVANT TO COOK'S COMPLAINT.

In this case, Cook asserts that CTC terminated her because she raised various issues to the Company's CEO. Bradstreet's testimony concerning Cook, her job performance, and the events that led to Cook's termination are relevant since Bradstreet has first hand knowledge about these subjects. However, Bradstreet's theories concerning her own termination must be excluded.

Simply put, there is no relationship between Bradstreet's assertion that CTC discriminated against her on the basis of her gender and/or retaliated against her under state and federal discrimination laws and Cook's assertion that CTC terminated her for raising FLSA, FMLA, and USERRA issues to Allieri.

Moreover, the terms of Bradstreet's Separation Agreement have no relevance whatsoever to Cook's Complaint. That CTC made a business decision to settle Bradstreet's various claims has no relevance whatsoever to the reasons for Cook's termination. Consequently, testimony about and documents concerning that settlement should be excluded.

## CONCLUSION

WHEREFORE, for the reason stated above, Defendant CTC respectfully request that this Court exclude all testimony by Bradstreet concerning her beliefs about the reasons for her termination, Allieri's response to disagreements, and Allieri's reaction to issues or problems. This Court should also prohibit the introduction of any evidence about Bradstreet's claims against CTC and the settlement of those claims.

. Respectfully Submitted,

CTC COMMUNICATIONS CORP.

By their Attorneys,
Marshall Law Group

/s/ Samantha C. Halem
Samantha C. Halem, NH Bar No. 17293
Mary L. Marshall, Pro Hac Vice
37 Walnut Street, Suite 300
Wellesley, Massachusetts 02481
(781) 235-4855

Dated: October 12, 2007

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing Defendant's Motion in Limine to Exclude Evidence Concerning Bradstreet's Allegations Against Defendant and Bradstreet's Settlement Agreement was served on this date and in the manner specified herein: Electronically served through ECF: Mary L. Marshall, Esq., counsel for the Defendant..

October 12, 2007

/s/ Samantha C. Halem
Samantha C. Halem