```
             UNITED STATES DISTRICT COURT FOR THE
                   DISTRICT OF NEW HAMPSHIRE
```

Karen Cook

   v.                                  Civil No. 06-cv-58-JD
                                      Opinion No. 2007 DNH 134
CTC Communications Corp.


                            O R D E R

    Karen Cook brings claims against her former employer, CTC Communications Corporation, alleging that she was terminated in retaliation for her support of other employees' rights under a variety of federal and state laws.  CTC has filed motions in limine to exclude certain evidence at trial.  Cook objects to the motions.


I.  Motion to Exclude Evidence of Conduct

    CTC contends that evidence of conduct and events that Cook did not raise in her discussions with Tracy Bradstreet, CTC's vice president for human relations, or Ray Allieri, CTC's CEO, is irrelevant because she could not have been terminated in retaliation for complaints about issues she did not raise.  CTC also contends that Cook cannot introduce evidence pertaining to events that occurred after her termination or that Cook learned of after she was terminated.

A.   <u>Torkelson, Connolly, Sutton, Mayo</u>

CTC states that evidence about its employees John Torkelson and Jean Connolly should be excluded entirely and evidence about its employees Joey Sutton and Lisa Mayo should be limited to the issues Cook raised with Bradstreet or Allieri.  CTC argues generally that all evidence about conduct which Cook did not report to her superiors at CTC is irrelevant.  CTC also contends that any probative value of that evidence is far outweighed by the risk of unfair prejudice and that the evidence is hearsay.

1.   <u>Torkelson</u>

Cook stated in her objection to summary judgment that a CTC manager called her in October of 2005 for leave to terminate an employee, John Torkelson, who had been absent due to stress-related illness.  Cook responded that Torkelson appeared to be protected under the Family and Medical Leave Act ("FMLA") and possibly the Americans with Disabilities Act.  The manager then said that Torkelson had performance problems, but Cook said she would not give false reasons for termination.  Cook believed that the manager was angry at her because she would not authorize termination.  Torkelson was given FMLA leave.

CTC argues that Cook's evidence about Torkelson is irrelevant because she did not mention the incident to any superior until she told CTC's general counsel, James Prenetta, about it after she was terminated.[1]  CTC contends that because Allieri did not know that Cook had asserted FMLA rights on behalf of Torkelson before she was terminated, his termination decision could not have been based on that incident.

Cook claims that she was terminated for advocating for employees' rights under the FMLA and that her termination also constituted wrongful discharge under New Hampshire law.  Cook's FMLA claim has been dismissed by summary judgment.  Therefore, evidence of the Torkelson incident would have to support Cook's state law wrongful discharge claim to be relevant.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.  To prove her wrongful discharge claim, Cook must show that CTC "terminated the employment out of bad faith, malice, or retaliation; and . . . because the employee performed acts which public policy would

---

[1] The parties do not appear to dispute that Cook was notified of her termination at a meeting with Allieri and Prenetta, at which time the decision to terminate her had already been made.

encourage or . . . refused to perform acts which public policy would condemn."  <u>Lacasse v. Spaulding Youth Ctr.</u>, 154 N.H. 246, 248 (2006).

Cook argues that two managers reacted in a hostile manner to her when she raised an issue about FMLA protection for Torkelson. She contends that their hostile reaction "is indicative of CTC's motive and practice of seeking to avoid legal obligations and viewing Cook negatively for raising her legitimate concerns." Obj. at 3.  She does not explain why the managers' reaction may be imputed to CTC generally or to Allieri.  She also states that she told Allieri generally about unlawful and unethical terminations and that she discussed the Torkelson incident with Allieri and Prenetta at her termination meeting.  She does not have any evidence, however, that Allieri knew before he terminated her that she had raised an FMLA issue about Torkelson.

Because the record shows that Allieri did not know about Cook's role in the Torkelson incident before he terminated her, that evidence is not relevant to show that she was fired for engaging in activity that public policy, as codified in the FMLA, would support.  Therefore, because Cook has not shown that the challenged evidence is relevant, it is not admissible to show that she was fired for engaging in protected activity.

### 2. Jean Connolly

CTC represents that Cook stated in interrogatory answers that she "raised issues concerning an employee names [sic] Jean Connolly to Clint Milholme and to no one else." Mot. at 4. Without elaboration, CTC states that Cook "should not be permitted to introduce any evidence about Connolly." Id. Cook did not address evidence about Connolly in her objection.

As presented, CTC has not sufficiently developed an argument that evidence about Jean Connolly is inadmissible. See Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 260 (1st Cir. 1999). Therefore, the admissibility of evidence about Connolly must be assessed if and when it is offered at trial.

### 3. Joey Sutton

CTC contends that evidence about its former employee, Joey Sutton, must be limited to Cook's concern that Sutton did not receive his final paycheck and his unemployment notice on time because Cook only raised those matters in discussions with Bradstreet. Cook argues that she told Bradstreet "that she was concerned about Sutton's termination itself; a termination that Bradstreet authorized." Obj. at 8. She also relies on her

discussion with Allieri when she "raised her belief of unlawful and unethical terminations."  Id.

Cook testified at her deposition that she did not believe that Sutton's termination was unlawful.  Cook has not shown that she raised an issue about the legality of Sutton's termination, which would make that issue a possible basis for her termination.  Her general references in her discussions with Allieri about unlawful or unethical terminations would not have included Sutton's termination which Cook believed was lawful.

Therefore, evidence of Sutton's termination, other than issues about his paycheck and unemployment notice, is excluded.

### 4. Lisa Mayo

According to Cook, Bradstreet told her about Lisa Mayo, who was a CTC employee in Vermont.  Bradstreet said that Mayo had been on FMLA leave but that she had had performance problems before her leave so that CTC was going to backdate her termination to the end of her leave.  According to Cook, Bradstreet had Jawanna Benjamin, a contract payroll specialist with CTC, sign Mayo's termination letter because counsel told Bradstreet that she should not sign the letter herself.  When Mayo hired a lawyer, Bradstreet told CTC's managers to say that the person hired to replace Mayo was a "transitional hybrid" and

not a replacement.  Cook expressed no opinion as to whether Mayo's termination was legal.

CTC argues that evidence about Mayo, other than evidence of Cook's disapproval of the backdated letter and the story about Mayo's replacement, is not relevant because Cook never complained that Mayo's termination was illegal.  Cook contends that she "raised her belief of unlawful and unethical terminations" with Allieri.  She does not and cannot show, however, that she ever complained that Mayo's termination was unlawful.  Therefore evidence about Mayo's termination, other than the issue of the backdated letter and Mayo's replacement, is excluded as evidence of protected activity that caused her termination.

B.   Other "After-Acquired, Unasserted Issues"

CTC contends that Cook cannot use evidence that she did not report to Allieri or that she did not know about until it surfaced in discovery to show that her termination was retaliatory.  The challenged evidence includes testimony about a dispute between Benjamin and Bradstreet's replacement, Donna Heuchling, evidence of CTC's treatment of an employee accused of sexual harassment, and Bradstreet's opinions about her own termination.  As is discussed above, issues and complaints that

7

were not expressed prior to Cook's termination could not serve as the basis for her termination.

Cook asserts that CTC's objection to information she learned through discovery is not sufficiently specific to permit a response and that the other challenged evidence is relevant to issues other than proving that her protected activities caused her termination.  In particular, Cook intends to use the challenged evidence to show that CTC's reason for terminating her was a pretext for retaliation.  To the extent Cook introduces evidence to prove something other than that those events were the reason for her termination, a ruling as to whether the proffered evidence is admissible will be made then.

II.  <u>Motion to Exclude Evidence of Bradstreet's Opinions</u>

CTC asks that Bradstreet be precluded from testifying about the reasons she was terminated and her perception of Allieri's responses to disagreement and problems.  CTC also asks that evidence of Bradstreet's settlement agreement be excluded.  Cook states that she intends to use Bradstreet's testimony as evidence of CTC's motive in terminating Cook.

A.  <u>Bradstreet's Testimony</u>

The parties expect Bradstreet to testify that she was terminated because of her gender, in retaliation for asserting that certain employees who were to be laid off were in a protected class, because she was a whistle-blower, and in retaliation for questioning the demotion of an employee who raised compliance issues.  They also expect Bradstreet to testify about Allieri's response to problems and disagreements with employees.  CTC contends that such testimony is inadmissible character and bad acts evidence excluded under Federal Rules of Evidence 404(a) and(b), is unfairly prejudicial under Rule 403, and is unreliable.

1.  <u>Rule 404</u>

Rule 404(a)(1) and (2) apply only in the context of criminal cases.  Rule 404(a)(3) allows evidence of the character of a witness only as permitted under Rules 607, 608, or 609, which are not pertinent to the circumstances of this case.

Rule 404(b) excludes evidence of "other crimes, wrongs or acts" when offered "to prove the character of a person in order to show action in conformity therewith."  Such evidence "may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge,

identity, or absence of mistake or accident." United States v. Tse, 375 F.3d 148, 155 (1st Cir. 2004).  The proponent of evidence under the exceptions to Rule 404(b) bears the burden of showing it is admissible.  See United States v. Williams, 458 F.3d 312, 319 (3d Cir. 2006); United States v. Aboud, 438 F.3d 554, 581 (6th Cir. 2006); United States v. Sanders, 343 F.3d 511, 518 (5th Cir. 2003); United States v. Trenkler, 61 F.3d 45, 53 (1st Cir. 1995).

"To be admissible under Rule 404(b), the evidence must have special relevance to an issue in the case such as intent or knowledge, and must not include bad character or propensity as a necessary link in the inferential chain."  Tse, 375 F.3d at 155 (internal quotation marks omitted).  In addition, "the probative value of the bad act evidence must not be 'substantially outweighed by the danger of unfair prejudice.'"  Id. (quoting Rule 403).  Evidence of an employer's discriminatory actions or attitude is admissible to show motive and intent in firing an employee.  Brown v. Trs. of Boston Univ., 891 F.2d 337, 349 (1st Cir. 1989).  Evidence of a pattern of retaliation for similar reasons may be probative of motive and intent as to the employer's actions with respect to a another similarly situated person.  See Jay Edwards, Inc. v. New England Toyota Distrib., Inc., 708 F.2d 814, 824 (1st Cir. 1983).

Cook argues that Bradstreet's opinions that she (Bradstreet) was fired because of her gender, because she told Allieri that employees designated for layoff were protected, because she was a whistle-blower, because Allieri did not react well to disagreements or problems, and because she questioned the decision to demote an employee who raised compliance issues, show Allieri's similar motive in firing Cook.  To have "special relevance" to an issue in Cook's case, however, the evidence has to prove Allieri's retaliatory motive in her case without relying on showing bad character or propensity to retaliate.  The issue in Cook's case is whether Allieri fired her in retaliation for raising issues about CTC's compliance with the requirements of the Fair Labor Standards Act, the Uniformed Services Employment and Reemployment Rights Act, the Employee Retirement and Income Security Act, and state wage and benefits laws.  Therefore, at a minimum, the testimony about gender discrimination and Allieri's generally poor reaction to disagreements and problems does not meet the special relevance test.

If Bradstreet's opinion that she was fired in retaliation for raising issues about protected employees or because she was a whistle-blower would meet the special relevance test, that evidence must also be considered under Rule 403.  In that context, "evidence may be excluded if its probative value is

substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Fed. R. Evid. 403.  CTC bears the burden of showing that Bradstreet's testimony is not admissible under Rule 403.  Tse, 375 F.3d at 164.

CTC contends that Bradstreet's testimony would require a lengthy consideration of collateral issues about the reasons for Bradstreet's termination.  CTC also argues that the jury would likely be confused or mislead by considering Bradstreet's opinions.  Those opinions, CTC urges, are unreliable and intended to show that Allieri was a bad person and to incite the jury's emotions.

Bradstreet's opinion that she was fired in retaliation for being a whistle-blower and championing the rights of other employees appears to have little probative value in the context of this case.  Bradstreet and Cook did not get along, and Bradstreet recommended that Cook be fired, which led to Prenetta's investigation and the decision to terminate her employment.  The evidence presented for purposes of summary judgment shows that Cook's claims are based on her perception that Bradstreet was retaliating against her because of Cook's

advocacy of compliance issues and Cook's refusal to follow Bradstreet's directions that Cook believed were illegal.

Nevertheless, it is difficult to assess the probative value of evidence before trial. If Bradstreet's limited opinions were allowed, however, evidence would not be permitted to bolster those opinions, such as the timing of events prior to Bradstreet's termination. In addition, CTC would be afforded an opportunity to provide evidence of its reasons for Bradstreet's termination. The final decision on admissibility will be made at trial.

### B. Settlement Agreement

CTC moves to exclude all evidence pertaining to its negotiations with Bradstreet that led to their settlement agreement and of the settlement agreement itself. CTC contends that evidence of the negotiations and settlement agreement are barred by Federal Rules of Evidence 408 and 403, are hearsay, and are irrelevant. Cook responds that she would offer evidence of the settlement agreement to show Bradstreet's bias or prejudice.

Settlement negotiations and agreements are not admissible to prove liability for or the invalidity of a disputed claim. Fed. R. Evid. 408(a). That evidence is not excluded under Rule 408 if it is offered, instead, for other purposes such as to show a

witness's bias or prejudice.  Fed. R. Evid. 408(b); <u>Sheppard v. River Valley Fitness One, L.P.</u>, 428 F.3d 1, 12 (1st Cir. 2005). Alternatively, evidence of settlement negotiations and agreement may be excluded under Rule 403.  <u>Galarneau v. Merrill Lynch, Pierce, Fenner & Smith</u>, --- F.3d ---, 2007 WL 2964188 at *14 (1st Cir. Oct. 12, 2007).

Cook contends that she would have Bradstreet testify that she, Bradstreet, was terminated in retaliation for being a whistle-blower and for championing the rights of others to show a pattern of retaliatory terminations.  At the same time, Cook intends to impeach Bradstreet's credibility by introducing her settlement agreement with CTC to show that she is biased or prejudiced in favor of CTC.  Cook argues that the negotiation documents and the settlement agreement "are relevant to the issue of whether Bradstreet had a legitimate claim of retaliation (motive/intent of CTC) and/or whether Bradstreet lied about legal claim [sic] in order to negotiate more severance (credibility). Further, the negotiation documents demonstrate that obtaining Bradstreet's cooperation with the Cook litigation was a key concern for CTC; thus the documents are relevant to bias and motive for testimony."  Obj. at 13.

Under the plain terms of Rule 408, Bradstreet's negotiations and settlement agreement with CTC are not admissible to show

whether Bradstreet had a legitimate claim of retaliation, to show CTC's motive or intent in terminating her, or to prove whether Bradstreet lied about her claim against CTC.  Evidence of the settlement is not excluded under Rule 408 <u>only</u> to the extent it is offered to show Bradstreet's bias or prejudice as to CTC.

CTC contends that evidence of the negotiations and agreement are barred under Rule 403 as being more unfairly prejudicial than probative of matters at issue in this case.  To the extent Bradstreet's credibility is at issue, that is whether the terms of the settlement agreement would affect her testimony, evidence pertaining to bias would not likely be barred by Rule 403.  Otherwise, it appears that evidence of the settlement negotiations and agreement are barred under Rule 408(a) and would likely also be barred under Rule 403.  A determination as to whether or not evidence of the settlement agreement and settlement negotiations is admissible, however, must be made in the context in which it is offered at trial.[2]

CTC also contends that documents from the settlement negotiations and Bradstreet's testimony about statements made in the course of those negotiations are hearsay.  That objection is

---

[2] Only those parts of the agreements or negotiations that pertain to Bradstreet's bias, if anything, would be admissible.

not sufficiently developed to be addressed.  If necessary and appropriate, CTC can raise its hearsay objection at trial.

## Conclusion

For the foregoing reasons, the defendant's motion in limine to exclude evidence and conduct (document no. 88) and the defendant's motion in limine about Bradstreet's opinions (document no. 87) are granted in part and denied in part as is more fully stated in this order.

SO ORDERED.

*/s/ Joseph A. DiClerico, Jr.*
Joseph A. DiClerico, Jr.
United States District Judge

October 31, 2007

cc: Heather M. Burns, Esquire
    Samantha C. Halem, Esquire
    Lauren S. Irwin, Esquire
    Mary L. Marshall, Esquire